# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| **MARY J. RODARTE,**<br><br>    **Plaintiff,**<br><br>  **vs.**<br><br>**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**<br><br>    **Defendant.** | **CV 12-97-BLG-SEH-CSO**<br><br>**<u>FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE ON SUMMARY JUDGMENT MOTIONS</u>** |

Plaintiff Mary J. Rodarte ("Rodarte") seeks judicial review of

Defendant Acting Commissioner of Social Security's ("Commissioner")

decision denying her application for supplemental security income

("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C.

§§ 1381-1383(c). On February 1, 2013, then-Chief Judge Cebull

referred this case to the undersigned for all pretrial proceedings. *ECF*

*11.*[1]

---

[1]The ECF citation refers to the document as it is numbered in the Court's electronic filing system. Citations to page numbers refer to those assigned by the ECF system.

Now pending are the parties' cross-motions for summary judgment.  *ECFs 15* (Rodarte's motion) and *22* (Commissioner's motion).  For the reasons stated below, the Court recommends that Rodarte's motion be denied, the Commissioner's motion be granted, and the ALJ's decision denying SSI be affirmed.

## I.  PROCEDURAL BACKGROUND

Rodarte filed her SSI application on April 7, 2008, claiming that she had been unable to work since August 1, 2001.  *Tr. 174.*  The Social Security Administration ("SSA") denied Rodarte's application initially and upon reconsideration.  *Tr. 126, 129-30.*  On April 19, 2010, an Administrative Law Judge ("ALJ") held a hearing.  *Tr. 40-106.*  On September 1, 2010, the ALJ issued a written decision denying Rodarte's claim for SSI.  *Tr. 21-33.*  On June 6, 2012, when the Appeals Council denied Rodarte's request for review, the ALJ's decision became final for purposes of judicial review.  *Tr. 1-5*; 20 C.F.R. § 416.1481 (2012).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id*. (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted).

The Court must consider the record as a whole, considering both evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III. <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-

Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV. THE ALJ's OPINION

The ALJ followed the five-step sequential evaluation process in considering Rodarte's claim. First, the ALJ found that Rodarte had not engaged in substantial gainful activity since April 7, 2008 – the date she filed her application for SSI. *Tr. 23.*

Second, the ALJ found that Rodarte has the following severe impairments: "hepatitis C; migraine headaches; degenerative disc disease of the cervical spine with mild spondylosis at C5-6; gastroesophageal reflux disease (GERD); bipolar disorder; and generalized anxiety disorder[.]" *Id.*

Third, the ALJ found that Rodarte does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. *Tr. 23-26.*

The ALJ found that Rodarte has the following residual functional capacity ("RFC"):

to perform light work as defined in 20 CFR 416.967(b) except she can climb ladders, ropes, and scaffolds occasionally. She can frequently balance, climb ramps/stairs, stoop, crouch, kneel, and crawl. She can handle objects (gross manipulation) frequently with her left upper extremity. She can finger (fine manipulation) items no smaller than the size of a paper clip frequently with her left upper extremity. She should avoid concentrated exposure to excessive vibration, use of moving machinery, and unprotected heights. She should perform work that is limited to simple, routine, and repetitive tasks. She should have only occasional (on a regular, continuous basis, up to 1/3 of the time) interaction with the public. She should perform work that requires only frequent interaction with her supervisor.

*Tr. 26-27.*

Fourth, the ALJ found that Rodarte is unable to perform her past relevant work as a carnival ticket seller. *Tr. 32.* The ALJ reached this conclusion finding that "[a]lthough this job is light in exertional demand and unskilled in nature, it required her to perform work that required more than occasional interaction with the public, which exceeds her current residual functional capacity." *Id.*

Fifth, the ALJ found that Rodarte could perform jobs that exist in significant numbers in the national economy. He considered Rodarte's age (39 years old – which is defined as a younger individual – at the

time she filed her SSI application), education (which the ALJ noted was "limited"), work experience (which the ALJ noted was unskilled past relevant work such that transferability of skills was not an issue), and RFC. *Tr. 32-33*. Relying on testimony from a vocational expert ("VE") who considered these factors, the ALJ concluded that Rodarte could perform work in the following representative occupations: a flagger, a garment/clothes sorter, and a pilot/escort vehicle driver. *Tr. 33*. Thus, the ALJ determined that Rodarte was not disabled. *Id.*

## V. PARTIES' ARGUMENTS

Rodarte argues that the ALJ erred in four principal ways: (1) by disregarding objective evidence from treating physicians and other health care providers respecting Rodarte's impairments, *Rodarte's Br. in Support of Mtn. for Summary Judgment (ECF 16) at 17-29*; (2) by improperly disregarding opinions of mental health care providers, *id. at 29-31*; (3) by improperly finding Rodarte not fully credible, *id. at 34*; and (4) by ignoring testimony from the vocational expert, who found Rodarte unable to work if consideration was given to her limitations, *id. at 34-36*.

In response, the Commissioner generally argues that, "[a]lthough [Rodarte] argues that the ALJ should have adopted the treating source 'opinions' in this case, no treatment provider opined as to [Rodarte's] functional limitations. Indeed, the only sources who did give such an opinion, Dr. Kuka and the state agency physicians, are consistent with or less restrictive than the ALJ's RFC finding." *Comm.'s Br. (ECF 24) at 2.* More specifically, the Commissioner argues: (1) the ALJ reasonably weighed the medical evidence, including evidence from Rodarte's treating physicians and mental health care providers, *id. at 2-6*; (2) the ALJ properly evaluated Rodarte's credibility, id. at 6-10; and (3) the ALJ properly relied on the vocational expert's opinion, which was based on a proper hypothetical question that accurately and comprehensively described Rodarte's limitations,, *id. at 10-11.*

In reply, Rodarte argues that: (1) the Commissioner failed to respond to her argument that the ALJ failed to afford proper weight to the findings and opinions of Rodarte's mental health treating and reviewing physicians together with the opinions of "treating mental health providers, Alicia Zander, NP and [Marion] Grummett, MS,

LCPC," whose opinions are "fully supported by the objective findings and serial examinations[,]" *Rodarte's Reply Br. (ECF 25) at 4*; (2) the ALJ's failure to properly consider Rodarte's medical records led the ALJ to improperly evaluate Rodarte's credibility, *id. at 4-5*; (3) the ALJ erred in ignoring hospital admission notes of August 2010 indicating Rodarte's suicidal thoughts, *id. at 5*; (4) the ALJ erred in accepting testimony of Dr. Kuka "who ignored the findings by the mental health care provider of mania up to and including September 2, 2010[,]" *id.*; (5) the ALJ erred in finding that Rodarte had the ability to interact with the public up to a third of the time and in failing to consider Rodarte's need to write things down to remember, to be reminded to take her medicine or go places, and to have up to an hour to calm down after being agitated or nervous, *id.*; (6) the ALJ further erred in relying on the testimony of Dr. Kuka because, similar to his testimony in *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2011), in which the Ninth Circuit found "substantial evidence that contradicts Dr. Kuka's opinion[,]" Dr. Kuka failed to consider the entire record, including evidence that Rodarte was hospitalized for three days and had a borderline personality

disorder diagnosis, rendering Dr. Kuka's testimony unreliable, *id. at 6*; (7) the ALJ erred in failing to include in Rodarte's list of severe impairments her borderline personality disorder, *id. at 7*; (8) the ALJ erred in failing to include either Rodarte's mental limitations or her need to separate and take a time out for one or two hours if she gets nervous, agitated, or anxious, *id.*; (9) Rodarte's "description of her activities is not inconsistent with her mental limitations nor consistent with the ability to perform substantial gainful activity, and is fully consistent with the opinion of her treating physicians and health care providers[,]" *id.*; and (10) "[t]he complete absence of specific findings [that Rodarte's] activities are inconsistent with her mental limitations mandates the matter be reversed or the ALJ decision be remanded for further consideration[,]" *id. at 8*.

## VI.  **DISCUSSION**

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth

Circuit authority, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error. Thus, the Court will recommend that the ALJ's decision be affirmed.

## A.  ALJ's Consideration of Evidence

In evaluating Rodarte's claim, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *Tr. 21-33.*  He reviewed, as discussed further below, his rationale for rejecting certain evidence in his assessment of Rodarte's medical records, credibility, and RFC. *Tr. 26-32.*  He also set forth the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to Rodarte's claim.  *Id.*  For these reasons, and for the reasons

discussed below, the Court finds unpersuasive Rodarte's argument that the ALJ failed to base his decision on substantial evidence.

**B.    ALJ's Assessment of Evidence from Treating Physicians and Other Health Care Providers**

Rodarte's first allegation of error is that the ALJ disregarded evidence of her limitations from mental health care providers and treating physicians. *ECF 16 at 17-29.*  In support of this argument, Rodarte summarizes in her opening brief records of medical and mental health treatment she sought and received from about June of 2005 to August of 2010. *Id. at 20-26.*  The summarized records include notes from: Dr. Robert T. Harper, D.O., (*Tr. 419-21*); Dr. Angela Casmier, M.D., (*Tr. 422-29*); Dr. Jeanette Heberle, Ph.D., both from 2010 (*Tr. to 432-50*) and from prior consultations in 2009 (*Tr. 399-410*); the Deering Community Health Center by physician assistant Tara Cooper (*Tr. 335-36*); the Indian Family Health Clinic ("IFHC") by nurse practitioner Anna Christine Grotbo (*Tr. 312*); IFHC Primary Care Clinic (*Tr. 313-15*); IFHC by Dr. Jenni Bigback, M.D. (*Tr. 323-29, 331, 333*); counselor Marion Grummett, MS, LCPC (*Tr. 296-99, 303-08*); the Billings Clinic Emergency Room by Dr. James Miller, D.O. (*Tr. 292-93*); and the

Austin/Travis County Community Health Center in Texas by nurse practitioner Alicia Zander and others (*Tr. 252-73*).

Rodarte argues that these and other records reflect that she suffered from various limitations, including: (1) a history of depression with three suicide attempts, *ECF 16 at 27*; (2) bipolar symptoms including anxiety, nervousness, and paranoia when she is in a busy store, which have twice caused her to leave the store before purchasing items and which cause her to take an hour or two to recover, *id.*; (3) problems with short-term memory, which causes her to have to write things down to remember them or be reminded by other to go places, *id.*; (4) forgetfulness which sometimes causes her to miss taking her medications, *id. at 27-28*; (5) problems getting along with family, friends, neighbors, and others, *id. at 28*; and (6) side effects from medications, include tiredness and not caring what she wears, *id.* Rodarte argues that the ALJ did not include these mental limitations or Rodarte's need to "take a time out" for one or two hours as part of Rodarte's limitations. *Id. at 28-29.* The Court is not persuaded.

Rodarte is essentially urging the Court to reweigh the evidence,

and to arrive at a conclusion different from that of the ALJ. The Court
is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th
Cir. 1997). Also, from a careful review of the ALJ's written decision, it
is clear to the Court that the ALJ considered those facts Rodarte now
emphasizes but concluded, based on the evidence before him, that
Rodarte's functional limitations did not preclude substantial gainful
activity.

For example, respecting Rodarte's allegations of disabling mental
conditions, the ALJ specifically found that Rodarte suffers from bipolar
disorder and generalized anxiety disorder. *Tr. 23.* He expressly noted
that Rodarte reported to Dr. Heberle that she had made three suicide
attempts in the last 18 months. *Tr. 30.* The ALJ noted that Dr.
Heberle indicated from Rodarte's own report that Rodarte was very
mentally ill and claimed multiple personalities. But Dr. Heberle did
not note significant deficits in Rodarte's functioning and did not note
significant abnormalities. Rather, the ALJ noted, Dr. Heberle found
Rodarte to be "oriented to person, place, time, and task[,]" and
indicated that Rodarte's "spontaneous speech was very good for her

education level." *Id.* The ALJ also noted that Dr. Heberle reported that Rodarte "exhibited a lot of insight[ ]" and "did not have problems with anxiety, attention, or concentration[,] ... understood most things, and could make her thoughts known." The ALJ noted that Dr. Heberle "opined [that Rodarte] was a pleasant woman who was trying to live a better life, and was finding it hard because of the resistance of her family." *Id.*

Also, contrary to Rodarte's allegations of error, the ALJ did specifically address Rodarte's claimed need to take a time out for one or two hours if she gets nervous, agitated, or anxious. In his written decision, the ALJ stated:

> Although [Rodarte] alleged significant functional limitations, the objective medical findings do not corroborate her allegations. In fact, they showed that she functioned quite well when she was taking her medications and was receiving outpatient psychiatric therapy. Although [Rodarte] alleged in her disability report that she had anxiety attacks all the time, the medical records do not show that they were occurring at a frequency and severity that prevented her from functioning. For instance, progress notes from Indian Family Health Clinic dated January 27, 2009, showed that [Rodarte] was having increased anxiety and stress due to situational stressors at that particular time. Despite her complaints, the examiner reported that objectively, [Rodarte] looked well and did not appear to be

distressed.  The examiner opined [Rodarte] was fairly organized despite her complaints of increased anxiety.

*Id.*

Respecting Rodarte's allegations of disabling physical conditions, the ALJ specifically found that she suffers from hepatitis C, migraine headaches, degenerative disc disease of the cervical spine with mild spondylosis at C5-6, and gastroesphageal reflux disease.  *Tr. 23.*  But he further concluded, after a thorough review of the evidence, that those conditions did not result in functional limitations of such severity as to preclude Rodarte from performing all types of work-related activity.  Rather, the ALJ noted that "[t]he record contained limited objective findings, a history of medical non-compliance, as well as [Rodarte's] own reporting of minimal limitations in her activities of daily living."  *Tr. 28.*  The ALJ added that the record contained references that Rodarte "had traveled to attend a wedding, was working part-time, and was actively looking for more work that offered additional hours."  *Id.*  These observations by the ALJ, together with the following other evidence that he discussed and considered, support his conclusion respecting Rodarte's lack of functional limitation.

The ALJ noted evidence of record that: (1) Rodarte reported having migraine headaches but medical records fail to show that they were of such severity or frequency to preclude all work activity; (2) Dr. Bigback examined Rodarte in 2007 and noted she was alert, oriented, in only some mild physical distress because of her headache, and was very friendly; (3) Rodarte reported to Dr. Bigback that she had only one severe headache per month so that Dr. Bigback encouraged her to use over-the-counter Advil as necessary for headaches; (4) at the Deering Clinic in November 2007, Rodarte was described as very pleasant, well developed, well nourished, in no acute distress, alert, oriented times three, cooperative, displaying stable vital signs, normal heart and lung sounds, normal lab results, and extremities without edema, clubbing, or cyanosis; (5) x-rays of Rodarte's cervical spine in 2010 showed degenerative disc disease with mild spondylosis and mild bony neural foraminal narrowing on the right at C5-6; and (6) Rodarte had not been entirely compliant with taking prescribed medications. *Tr. 28-29.*

For all of the foregoing reasons, the Court concludes that the ALJ did not err in evaluating the objective evidence from the treating health

care providers regarding Rodarte's impairments.

## C. ALJ's Consideration of Opinions of Mental Health Care Providers

Rodarte next argues that the ALJ erred in failing to afford proper weight to the opinions of other health care providers, including nurse practitioners, physician assistants, and counselors, who are not considered by the Social Security Administration to be acceptable medical sources. *ECF 16 at 29-31.* Again, the Court is not persuaded.

In making this argument, Rodarte maintains that these sources made "findings" and rendered opinions consistent with Rodarte's claimed limitations and that the ALJ simply failed to consider them. The Court disagrees.

As noted above, the record is replete with treatment notes and progress reports from a large variety of health care providers – both those considered to be acceptable sources to render opinions respecting functional limitations and those who are not. The "findings" and opinions to which Rodarte refers are merely Rodarte's subjective recitation of her medical history to health care providers who noted them in her medical record. *See, e.g., Tr. 295-99* (counselor Marion

Grummett, noting Rodarte claims to have been diagnosed with bipolar disorder); *Tr. 303* (Rodarte reporting to Grummett that she had been depressed because of family problems). They are not medical opinions describing Rodarte's functional limitations in the context of a Social Security disability determination.

The Court concludes that none of the conditions or accompanying functional limitations that Rodarte has identified for the first time in her reply brief that are allegedly attributable to nurse practitioners, physician assistants, and counselors are inconsistent with the RFC as determined by the ALJ. Thus, the ALJ did not err.

### D.   ALJ's Consideration of Rodarte's Credibility

Rodarte next argues that the ALJ erred in finding her not fully credible. The Court disagrees.

In *Molina v. Astrue*, the Ninth Circuit recently restated the long-standing standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the

claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. *Tr. 27.* Also, the ALJ did not find that Rodarte was malingering. Thus, to find that Rodarte was not entirely credible, the

ALJ had to give specific, clear, and convincing reasons. The Court concludes that he did.

As an initial matter, the ALJ found Rodarte credible to the extent that she  alleged some limitation in her ability to perform work activity. *Tr. 28.* He noted that Rodarte would experience some fatigue and pain with heavy lifting or prolonged periods of walking or standing. Also, the ALJ concluded that Rodarte would have some limitations due to her mental impairments and concluded that she should have only occasional interaction with the public and only frequent interaction with supervisors. The ALJ then reduced Rodarte's RFC accordingly to accommodate all of those limitations. *Tr. at 26-27.* Thus, the ALJ did not entirely reject Rodarte's allegations. Rather, the ALJ was careful to parse out those allegations that he found credible from those that he found not credible, as he was required to do. And, the ALJ gave the following specific, clear, and convincing reasons for rejecting other portions of Rodarte's allegations and making his credibility determination.

First, the ALJ observed that evidence of record contained

"significant inconsistencies" that called into question Rodarte's allegations of functional limitations that would preclude all work activity. The ALJ noted that the record contained limited objective findings. For example, he wrote, despite Rodarte's claim of migraine headaches, the medical records did not support her contention that the headaches were so frequent or severe as to preclude her from working. *Tr. 28.* Also, the ALJ noted that despite Rodarte's chronic neck pain, x-rays showed only minimal changes and degenerative disc disease with mild spondylosis and mild bony neural foraminal narrowing on the right at C5-6. And it was recommended that she undergo physical therapy. *Tr. 29.* An ALJ may take the lack of objective medical evidence into consideration when assessing credibility. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Second, the ALJ noted that evidence in the record showed that Rodarte was not entirely compliant in taking prescribed medications, "which suggests that the symptoms may not have been as limiting as [Rodarte] has alleged[.]" Id. The ALJ observed that the record showed

that, when Rodarte had mood abnormalities, she admitted that she had skipped a couple of doses of her Lithium. Her laboratory results at other times also showed her Lithium level was subtherapeutic and she was counseled more than once to take her Lithium regularly. Id.

Third, the ALJ noted that Rodarte's activities of daily living are inconsistent with disabling symptoms and limitations. He observed that Rodarte, in her function report dated April 20, 2008, indicated that she: (1) prepared her own meals daily; (2) performed household chores such as making beds, cleaning the home, doing laundry, shopping for groceries and other items, and paying bills; (3) watched television; (4) played on a computer; (5) socialized with others by talking with them and going for walks with them; (6) cared for her pet cats and fish; (7) handled her own personal care; and (8) handled her own bills, checkbook, and savings account. Tr. 29.

In a subsequent function report in 2008, the ALJ noted that Rodarte: (1) did laundry and cleaned the home; (2) visited friends and family a few times a week; (3) went to church and the store on a regular basis; and (4) went to Phoenix for her daughter's wedding. Id.

The ALJ also observed that Rodarte testified that she: (1) went outside at least three times a week if not more; (2) performed tasks for her landlord, such as putting reminders or flyers on tenants' doors; (3) often drove her partner's mother around; (4) did activities with friends and family such as playing cards and going to the park for picnics; (5) cared for her partner's 10-year-old child, including ensuring she ate breakfast, walking her to and from school, getting her a snack after school, and occasionally helping her with homework. Tr. 29-30.

For all of the foregoing reasons, the Court concludes that the ALJ did not err respecting Rodarte's credibility. The ALJ employed ordinary credibility evaluation techniques, as he was permitted to do. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (setting forth what an ALJ may consider in determining a claimant's credibility); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Rodarte urges the Court to reweigh the evidence, and to arrive at a conclusion different from that of the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

In sum, the Court concludes that the ALJ gave specific, clear, and

convincing reasons for finding that Rodarte was not credible to the extent she alleges inability to perform all work activity. Thus, the ALJ did not err.

### E.   ALJ's Consideration of Vocational Expert's Opinion

Rodarte argues that the ALJ's decision is not supported by substantial evidence in part because his hypothetical question to the vocational expert did not include limitations allegedly identified by medical treatment providers or about which Rodarte testified. The Court is not persuaded.

As discussed above, the Court has already determined that the ALJ based his decision on substantial evidence in the record. And it has concluded that the ALJ did not err either in his assessment of the opinions of Rodarte's medical treatment providers or in his assessment of Rodarte's credibility regarding her symptoms and limitations. Thus, the ALJ was not required to include in his hypothetical question to the vocational expert Rodarte's symptoms and limitations not supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical

question that are not supported by substantial evidence."). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Rodarte's limitations. The Court concludes he did so, and thus he did not err.

## VII. <u>CONCLUSION</u>

Based on the foregoing, **IT IS RECOMMENDED** that Rodarte's summary judgment motion (*ECF 15*) be DENIED, the Commissioner's summary judgment motion (*ECF 22*) be GRANTED, and the Commissioner's decision denying SSI be AFFIRMED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 16th day of August, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge